UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA DAVIS and
ALFONZO BUTLER,

      Plaintiffs,

  v.

CREDIT ACCEPTANCE
CORPORATION, *et al.*,

      Defendants.
_____/

Case No. 22-10367

Hon. George Caram Steeh

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION (ECF NO. 13)

Before the court is Defendant Credit Acceptance Corporation's motion to dismiss and compel arbitration. For the reasons explained below, Defendant's motion is denied.

I.    Background Facts

In October 2021, Plaintiffs purchased a used car from Defendant Yes Auto Sales, Inc. ("the Dealership"). The Dealership assigned the contract between the parties to Defendant Credit Acceptance Corporation for servicing and collections. The contract contains an arbitration clause, providing that either party may elect to have a dispute related to the contract resolved through arbitration. *See* ECF No. 13 at PageID 91

("Either You or We may require any Dispute to be arbitrated . . . ."). Relevant here, the contract also provides that the purchaser may opt out of the arbitration clause:

> Your right to reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells us You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If you reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of your Contract. If you don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

ECF No. 13 at PageID 91.

Plaintiffs purchased their vehicle on October 20, 2021. Within the thirty-day opt out period, Plaintiffs' counsel sent a letter rejecting the arbitration clause to Credit Acceptance Corporation. ECF No. 17-3. The letter states that counsel has been "retained to represent Georgia Davis and Alfonzo Butler. . . . My clients are opting out of the arbitration clause in the Credit Acceptance contract." *Id.* The letter was sent by certified mail on November 18, 2021, and signed by Plaintiffs' lawyer. Credit Acceptance Corporation acknowledged receipt of the letter. ECF No. 17-4.

Plaintiffs filed this suit on February 19, 2022, alleging violations of the Truth in Lending Act, Federal Odometer Act, and Magnuson-Moss

Warranty Act, among other claims. Credit Acceptance Corporation has moved to dismiss and compel arbitration, alleging that Plaintiffs' opt-out notice was ineffective.

II. Law and Analysis

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The FAA allows the court to enforce an arbitration agreement by staying an action and compelling arbitration. 9 U.S.C. §§ 3, 4. As the Supreme Court has explained, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). A dispute regarding "whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 84.[1] "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the

---

[1] Parties may agree to have the arbitrator decide gateway issues of arbitrability; however, the parties do not argue that is the case here. *See Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021).

specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

The FAA places arbitration agreements on "the same footing as other contracts," but "it does not alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020) (citations omitted). The often-noted federal policy in favor of arbitration makes "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (citation omitted).

Therefore, the court looks to the applicable state law of contract formation and interpretation to determine the enforceability of an arbitration agreement. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). Under Michigan law, "[t]he primary goal in interpreting contracts is to determine and enforce the parties' intent. To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Village of Edmore v. Crystal Automation Sys. Inc.*, 322 Mich. App. 244, 262 (2017) (citation omitted). The court enforces unambiguous contracts as written. *Id.* "The language of a contract

- 4 -

is to be given its ordinary, plain meaning; technical, constrained constructions should be avoided." *Id.*

Defendant argues that Plaintiffs' rejection notice was not effective under the terms of the agreement, which states that it "is only effective if it is signed by all buyers, co-buyers and cosigners. . . ." Specifically, Defendant asserts that because Plaintiffs did not sign personally, but through their attorney, they did not strictly comply with the opt-out provision.

Defendant's attempt to capitalize on an overly technical reading of the contract is unavailing. Plaintiff's counsel's signature, authorized by his clients and presented on their behalf, has the same legal effect as their personal signatures. This conclusion is based on the relationship between an attorney and client, which is one of agency. *See Uniprop, Inc. v. Morganroth*, 260 Mich. App. 442, 446 (2004). "It is a longstanding legal principle that a duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted. . . . In effect, the agent stands in the shoes of the principal." *In re Est. of Capuzzi*, 470 Mich. 399, 402 (2004). "A characteristic of an agent is that he is a business representative. His function is to bring about, modify, accept performance

of, or terminate contractual obligations between his principal and third persons." *Uniprop*, 260 Mich. App. at 448.

Thus, a contract need not specify that it may be signed by an authorized representative for such a signature to be valid; such signatures are generally valid and binding by operation of law. In addition to the general principles of agency law, Michigan law expressly permits an authorized representative to sign a retail installment contract on behalf of the buyer. M.C.L. § 445.853.

Against this backdrop, accepting the signature of a party's authorized representative in the place of a party's actual signature does not amount to "rewriting" the parties' agreement.[2] "The language of a contract must be construed according to its plain and ordinary meaning, rather than technical or constrained constructions." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Dillon v. DeNooyer Chevrolet Geo*, 217 Mich. App. 163 (1996)). Interpreting the buyer's signature requirement to exclude the signature of an authorized representative amounts to a constrained reading at odds with agency principles.

---

[2] In this regard, Defendant relies upon a report and recommendation issued on March 3, 2022, in *Bear v. Credit Acceptance Corp.*, Case No. 21-12353. The district judge has not yet accepted the report and recommendation. For the reasons set forth in this opinion, the court respectfully disagrees with the magistrate judge's conclusion that an attorney's signature was insufficient to properly reject the arbitration clause under the parties' agreement.

- 7 -

Through their attorney, Plaintiffs unambiguously rejected the arbitration clause in a timely manner. Accordingly, they did not agree to arbitration and the court may not compel them to submit their claims to such a tribunal.

IT IS HEREBY ORDERED that Defendant's motion to dismiss and compel arbitration (ECF No. 13) is DENIED.

Dated: August 24, 2022

                                   s/George Caram Steeh
                                   GEORGE CARAM STEEH
                                   UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 24, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk